UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., LENOVOEMC PRODUCTS USA, LLC, and EMC CORPORATION, <br><br> Defendants | Civil Action No. 16-cv-10860-PBS |
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NETAPP, INC. <br><br> Defendant | Civil Action No. 16-cv-10868-PBS |

**ORDER ON DEFENDANTS' RENEWED MOTION FOR ENTRY OF SUPPLEMENT
TO THE PROTECTIVE ORDER (#165)**

CABELL, U.S.M.J.

The parties in this case have been operating under a protective order entered on January 30, 2017. (Dkt. No. 100). Pending before me is a motion by the defendants seeking to supplement the existing protective order. (Dkt. No. 165). Among other things, the proposed supplement would include a provision allowing the defendants to designate certain documents as subject to a patent acquisition bar. (Dkt. No. 170-1). In practice, this means that any party or

counsel with access to the documents may not acquire or advise clients on acquiring patents or patent applications relating to the same subject matter of the patents at issue in this lawsuit. The plaintiffs oppose the motion. (Dkt. No. 174). After consideration of the parties' submissions and information adduced at a hearing on the motion, and as explained more fully below, the motion will be ALLOWED in part as it relates to EMC Corporation ("EMC"), and DENIED as it relates to Lenovo Group Ltd., Lenovo (United States) Inc., and LenovoEMC Products USA, LLC (the "Lenovo entities") and NetApp, Inc. ("NetApp").

### I.   BACKGROUND

Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (referred to hereafter collectively and in the singular as "IV") are in the business of monetizing patents through litigation and licensing campaigns. In this case, for example, IV has asserted various patent infringement claims against each of the defendants. IV's business is not insubstantial; its website boasts its success in acquiring 95,000 patents in its lifetime, and having about 30,000 patents "in active monetization programs that span 50 technology areas . . . and rising." IV's outside counsel, Russ August & Kabat ("RAK"), is tremendously active in filing patent infringement actions around the country.

The defendants previously sought a patent acquisition bar in their original motion for a protective order. (Dkt. No. 52). During a status conference on December 15, 2016, the court, in an effort to have the discovery process get underway, agreed to "adopt the protective order without the acquisition bar for everything [the defendants were] willing to turn over without an acquisition bar." (Dkt. No. 83 at 21). The court indicated during the conference and in its subsequent electronic order that it "anticipates adopting said orders without prejudice to renewed motions by defendants for further protection of identified documents." (Dkt. No. 78). The parties later filed a joint motion for a protective order, which was entered on January 30, 2017.

(Dkt. 87 & 100).  The case was then stayed on February 2, 2017 until it was partially lifted on July 26, 2018.[1]  Discovery has resumed and the defendants have now moved to revisit their proposed acquisition bar provision as a supplement to the current protective order.

## II.   LEGAL STANDARD

Upon a showing of "good cause," a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The same burden applies to the moving party when seeking to include disputed provisions.  *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (2010) (discussing inclusion of a patent prosecution bar provision).  The court has "broad discretion" to decide "when a protective order is appropriate and what degree of protection is required."  *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993).

The Federal Circuit has "generally deferred to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure."  *Deutsche Bank*, 605 F.3d at 1377 (quoting *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181-82 (Fed. Cir. 1996)).  However, in *Deutsche Bank*, the court held that "[g]iven the unique relationship of this issue to patent law, and the importance of establishing a uniform standard, . . . the determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law."  *Deutsche Bank,* 605 F.3d at 1378.  The same holds true for the inclusion of a patent acquisition bar provision.  *See, e.g.*, *EPL Holdings, LLC v. Apple, Inc.*, No. C-12-04306 JST (JSC), 2013 WL 2181584 (N.D. Cal. May 20, 2013); *Unwired Planet LLC v. Apple, Inc.*, No. 3:12-CV-00505-RCJ (VPC), 2013 WL 1501489 (D. Nev. Apr. 11, 2013); *E-Contact Techs.,*

---

[1] The stay was put in place pending the resolution of nine *inter partes* review proceedings against the asserted patents and was lifted with respect to one of the patents at issue.  The court anticipates that this acquisition bar would apply to those other patents if and when the stay with respect to them is lifted.

3

*LLC v. Apple, Inc.*, No. 1:11-CV-426 (LED/KFG), 2012 WL 11924448 (E.D. Tex. Jun. 19, 2012).

District courts have interpreted the standard set out in *Deutsche Bank* in one of two ways, each requiring a two-step inquiry.  The majority of courts require the moving party to first show that there exists an unacceptable risk of inadvertent disclosure of confidential information, on a counsel-by-counsel basis, without a bar in place, and then balance that risk against the potential harm to the party against whom the bar is sought.  *See, e.g.*, *NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F.Supp.2d 1040 (D. Ariz. 2011); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 274 F.R.D. 576 (E.D. Va. 2010); *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182 (D. Del. 2010).[2]

The minority framework involves a similar but slightly different analysis.  *See Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260 (D.N.M. 2015); *Eon Corp. IP Holdings v. AT & T Mobility LLC*, 881 F. Supp. 2d 254 (D.P.R. 2012); *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA (DMR), 2011 WL 197811 (N.D. Cal. Jan. 20, 2011).  Under this approach, the moving party must show that the proposed bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information."  *Deutsche Bank*, 605 F.3d at 1381.  In determining reasonableness, the court looks to the following factors: "the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar."  *Id.*  "[T]he burden then shifts to [the non-movant] to show that 'counsel-specific balancing' favors

---

[2] *See also, e.g.*, *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 11-1810(JLS/NLS), 2012 WL 528248 (S.D. Cal. Feb. 17, 2012); *AmTab Mfg. Corp. v. SICO, Inc.*, No. 11-2692, 2012 WL 195027 (N.D. Ill. Jan. 19, 2012); *Iconfind, Inc. v. Google, Inc.*, No. 11-319(GEB/JFM), 2011 WL 3501348 (E.D. Cal. Aug. 9. 2011); *Kraft Foods Global, Inc. v. Dairilean, Inc.*, No. 10-8006, 2011 WL 1557881 (N.D. Ill. Apr. 25, 2011); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, No. 05-4120, 2011 WL 148252 (N.D. Ill. Jan. 18, 2011).

exemptions for particular counsel." *Front Row Techs.*, 125 F. Supp. 3d at 1287 (citing *Eon Corp. IP Holdings*, 881 F. Supp. 2d at 257).

The significant difference between the two interpretations of *Deutsche Bank* is which party has the burden of proof on a counsel-by-counsel basis. The majority requires the moving party to prove the risk of inadvertent disclosure with respect to each attorney for the opposing side. *See e.g., NeXedge*, 820 F.Supp.2d at 1043. By contrast, the minority requires the party against whom the bar is sought to seek exemptions from the bar on a counsel-by counsel basis after the court has found an acquisition bar is warranted. *See Front Row Techs.*, 125 F. Supp. 3d at 1287.

In this court's view, the majority approach places an unrealistic burden on the moving party and directly contradicts the Federal Circuit case law. As discussed in *Front Row Technologies*, parties seeking an acquisition bar would have little to no knowledge of the day-to-day practice for any particular attorney for the opposing party. The Federal Circuit references a counsel-by-counsel analysis only in the context of **exemptions** from the bar already approved by the court. *See Deutsche Bank*, 605 F.3d at 1380. Further, as a practical matter, it "is difficult for a party without any information on opposing counsel beyond their website biographies to demonstrate" a risk of inadvertent disclosure on a counsel-by-counsel basis. *Front Row Techs.*, 125 F. Supp. 3d at 1288. "The courts should place the burden to produce this information on the party that possesses it." *Id.* This court agrees with the minority approach to this issue. *See id.* at 1287; *Eon Corp. IP Holdings*, 881 F. Supp. 2d at 257; *Applied Signal Tech.*, 2011 WL 197811, at *1.

### III. DISCUSSION

#### A. <u>EMC</u>

"Courts have recognized . . . that there may be circumstances in which even the most rigorous efforts of the recipient of . . . information to preserve confidentiality in compliance with the provisions of . . . a protective order may not prevent inadvertent compromise." *Deutsche Bank*, 605 F.3d at 1378. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980). In the present case, the plaintiffs are in the business of acquiring patents and patent applications in order to monetize them, and they do so on a large scale, having acquired over 95,000 patents to date. In addition, the plaintiff's counsel specializes in asserting these patents on behalf of IV and other clients. Through the process of discovery, EMC will be obligated to turn over confidential technical documents to the plaintiffs, which in turn could be inadvertently used to acquire other patents and spur future litigation. Given the nature of IV's business, its outside counsel's prolific patent assertion practice, and the highly sensitive nature of EMC's documents, the court finds that EMC has shown good cause or, more specifically, an unacceptable risk of inadvertent disclosure.

The court also finds that EMC's proposed acquisition bar, with a few modifications, reasonably reflects the risk of inadvertent disclosure. EMC has identified two categories of information that would trigger the bar: (1) confidential technical information (e.g., source code and schematics), and (2) confidential financial information (e.g., sales and revenue volumes regarding the accused products). While source code and technical data are often included in the scope of a prosecution or acquisition bar, financial information is specifically excluded. *See*

*Deutsche Bank*, 605 F.3d at 1381; *Front Row Techs.*, 125 F. Supp. 3d at 1289-90. Thus, the court finds that limiting the bar to apply only to the first category, confidential technical documents, is more appropriate in this case.

For the activities prohibited by the bar, EMC proposes "any activity related to competitive business decisions involving the acquisition of patents or patent applications relating to the technology embodied within the patents-in-suit, or advising or counseling clients regarding the same." EMC recognizes, as do other courts, that competitive decision-making activity does not preclude counsel from advising clients on other legal matters involving patents, including validity and settlement negotiations. *See EPL Holdings*, 2013 WL 2181584, at *5; *Unwired Planet*, 2013 WL 1501489, at *2. Additionally, EMC's proposal limits the subject matter covered by the bar to the subject matter of the patent-in-suit, consistent with the scope allowed by other courts. *See Eon Corp. IP Holdings*, 881 F. Supp. 2d at 258; *Applied Signal Tech.*, 2011 WL 197811, at *3.

Finally, EMC asserts that a bar is necessary for three years after the conclusion of this litigation given the shelf life of its accused products. EMC has provided no precedent to warrant the extended duration of this bar, as most courts imposing a bar provide for only one or two years following the end of the litigation. *See Front Row Techs.*, 125 F. Supp. 3d at 1291; *Inventor Holdings, LLC v. Google, Inc.*, No. 1:14-cv-00186 (GMS), 2014 WL 4369504, at *2 (D. Del. Aug. 27, 2014); *In re Trustees of Boston Univ. Patent Cases*, 2013 WL 12324364, at *3 (D. Mass. Nov. 15, 2013); *Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013); *Eon Corp. IP Holdings*, 881 F. Supp. 2d at 258 (limiting duration of bar to one year). In this court's view, a bar of two years following the end of litigation is more reasonable.

In sum, the court will impose a patent acquisition bar in this case. EMC is permitted to designate highly confidential technical documents "SUBJECT TO ACQUISITION BAR". Individuals at IV and its counsel who access these documents shall be barred from acquiring or advising clients on acquiring patents or patent applications relating to the subject matter of the patents-in-suit. This bar shall continue through the duration of this litigation, including any appeals, and for two years after its conclusion.

### B. Lenovo Entities and NetApp

By contrast, the court does not find it appropriate to allow the Lenovo entities and NetApp to use this acquisition bar. None of these defendants made a showing of good cause or a significant risk of inadvertent disclosure as required. As a result, the court need not address the reasonableness of the proposed bar with respect to these defendants. They have not met their threshold burden to persuade the court that they require the special protections afforded by an acquisition bar. Therefore, the Lenovo entities and NetApp shall not be permitted to use the acquisition bar designation for any of their production.

### IV. CONCLUSION

Based on the foregoing, the defendants' motion is ALLOWED in part with respect to EMC, and DENIED with respect to the Lenovo entities and NetApp.

*SO ORDERED.*

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  January 25, 2019