UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., LENOVOEMC PRODUCTS USA, LLC, and EMC CORPORATION, <br><br> Defendants | CA No. 16-cv-10860-PBS |
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NETAPP, INC. <br><br> Defendant | CA No. 16-cv-10868-PBS |

**ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION**

CABELL, U.S.M.J.

By Order dated January 25, 2019, this court granted in part and denied in part the defendants' Renewed Motion for Entry of Supplement to the Protective Order. (D. 165, 223). The Order allows EMC Corporation ("EMC") to designate certain documents

produced to the plaintiffs ("IV") as subject to a patent acquisition bar, which prevents IV and its counsel, who have access to certain highly sensitive documents, from acquiring or advising clients on acquiring patents or patent applications relating to the subject matter of the patents involved in this lawsuit.  In finding such a bar to be appropriate and reasonable, the court noted *inter alia* that IV's website boasted "its success in acquiring 95,000 patents" and noted that it had approximately 30,000 patents "in active monetization programs."  The website also noted that the number of IV's patents was "rising," although it is not clear whether that related to the number of patents being acquired or the number of patents being actively monetized, or both.  Against this backdrop, IV urges the court to reconsider its Order because, it asserts, the court mistakenly presumed that IV was still actively acquiring patents when IV in fact ceased its patent acquisition activities in 2017.  (D. 242).

The granting of a motion for reconsideration is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006).  "Motions for reconsideration are appropriate only in limited circumstances: (1) if the moving party presents newly discovered evidence, (2) if there has been an intervening change in the law, or (3) if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  *United States v.*

*Allen*, 573 F.3d 42, 53 (1st Cir. 2009); *see also Ferrara v. United States*, 372 F. Supp. 2d 108, 119 (D. Mass. 2005). These exceptions are "narrowly configured and seldom invoked." *United States v. Connell*, 6 F.3d 27, 31 (1st Cir. 1993).

Following a careful review, the court finds no basis to modify or reverse its Order. IV's motion rests principally on the Declaration of James A. Weisfield, IV's Vice President of Patent Sales and Partner Licensing, who avers that IV is "no longer acquiring patent assets" and "has not been involved in patent acquisition since 2017." Notably, though, the Declaration does not assert any salient facts that were not already before the court when deciding the underlying motion. The court acknowledges that IV's counsel argued at the hearing that IV had recently ceased patent acquisitions and had no immediate plans to resume such activity. However, the court balanced these assertions against the suggestive if not conflicting information on IV's website touting at a minimum IV's expansion of its active patent monetization programs, and the relative lack of a vigorous challenge to EMC's characterization of that same information as suggesting that IV was still involved in patent acquisition.

To be clear, the court finds that the patent acquisition bar it imposed would be and is reasonable even assuming IV is not presently actively engaged in patent acquisition. First, there is at least a basis to suspect that IV might resume such activity in

3

the future.  Indeed, as IV's own Senior Vice President of Global Licensing hedged in an article cited by IV, "[t]he market is not right at the moment for the type of fund we set up in the past although that's not to say we won't come up with a different model."  Jack Ellis, *Top Buyer Intellectual Ventures Announces Cessation of Patent Purchasing Activities, Leaving the Secondary Market in Limbo*, IAM MARKET (Apr. 12, 2017) https://www.iam-market.com.  Further, and in any event, the court's determination that there existed a substantial risk of disclosure supporting a limited patent acquisition bar was not based solely on IV's business model but flowed from the combination of IV's business model *and* the nature and scope of IV's counsel's active national patent litigation practice.  In that regard, the court remains concerned that the significant risk of inadvertent disclosure that underlay its original Order remains even if IV is not presently seeking to acquire patents, because IV's counsel may inadvertently use the information in EMC's technical documents when advising other clients on acquiring patents or patent applications relating to the same subject matter as the patents-in-suit.

    Finally, IV argues that the restriction on its outside counsel punishes and restricts counsel's practice.  The court notes in response that it has not restricted outside counsel's practice any more than it deems necessary to protect EMC's technology, and IV is always free to seek exemptions from the bar on a counsel-by-

4

counsel basis.  *In re Deutche Bank*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).[1]

For the foregoing reasons, the plaintiffs' motion for reconsideration is DENIED.

**<u>*SO ORDERED.*</u>**

*/s/ Donald L. Cabell*
DONALD L. CABELL, U.S.M.J.

DATED:  July 18, 2019

---

[1] IV also raises concerns regarding over-designation of documents but the protective order in place provides a procedure for challenging the designation of documents if such an issue should arise.  (D. 100, at 9-10).